## JANOWITZ v. LEVISON.

(Circuit Court of Appeals, Second Circuit. July 21, 1897.)

PATENTS—NOVELTY—DRESS STAYS.

The Janowitz patent, No. 512,113, for a twin wire dress stay covered with rubber or other suitable waterproof material, preferably perforated in several places along the center between the seams, is void for want of novelty. 80 Fed. 731, reversed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This was a suit in equity for alleged infringement of letters patent No. 512,113, issued January 2, 1894, to complainant, Janowitz, for a dress stay. The circuit court found that the patent was valid and infringed, and entered a decree for the complainant. 80 Fed. 731. The defendant has appealed.

Edwin H. Brown and Seabury C. Mastick, for appellant.
Louis C. Raegener, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. The patent in suit is for a "dress stay," an article employed for stiffening women's garments, and belongs to the class in which steel is used as a substitute for whalebone, and covered with rubber or other suitable material to prevent the steel from breaking or rusting, and to enable the stay to be stitched in place on the garment. The patent contains three claims, which are as follows:

"(1) A twin wire stay, having a hard, resilient waterproof coating covering the two members of the stay on all sides, and forming a filling connecting the two contiguous edges of said members, substantially as described. (2) A twin wire stay covered with vulcanized rubber, having a filling of the same between the wires, firmly uniting their inner edges, substantially as and for the purpose specified. (3) A twin wire stay covered with vulcanized rubber, having a channeled filling of the same between the wires, firmly uniting their inner edges, substantially as and for the purpose specified."

The court below adjudged all these claims to be infringed by the defendant. The principal question upon this appeal is whether the patent is void for want of novelty. As described in the patent, the stay consists of two wires, arranged side by side at a short distance from each other, and surrounded by a covering of rubber or other suitable compound. The rubber is preferably perforated in several places along the center between the seams, the center being a longitudinal depression or channel between the two wires. The prior state of the art is approximately exhibited by the statement of the patentee in the patent itself. He says:

"Heretofore it has been proposed to cover single steel stays with rubber, and an example of this is shown in my patent No. 496,313; but such stays cannot be sewed through, as is required in making dresses of the better class, unless the steels are perforated; and, if so perforated, they are so weakened at the point of perforation as to be almost sure to break under the strain to which they are

subjected. To remedy this it has been proposed to use double or 'twin' stays, and cover them with textile material sewed onto the stays. This, however, is also objectionable, as the steels rust under perspiration and after washing, and this destroys the stitching, so that they not only iron-mold the clothing of the wearer, but they become loose and annoying besides. To overcome these difficulties is the object of my invention, which I do by embedding duplex or twin steels in a suitable composition, such as rubber or similar compounds."

It thus appears not only that steel stays covered with rubber were old in the prior art, but that twin stays covered with textile material were also old; and that it was customary to form the rubber coating with perforations to permit of stitching the stay to the garment. It appears abundantly by extraneous evidence that it was also old when the twin stays were covered with textile material to make them in the form of the stay of the patent, with perforations along the center or channel between the two wires, or without the perforations, in order to permit of stitching the stay to the garment either through the perforations or directly through the material of the channel. Consequently, the extent of the improvement made by the patentee was to substitute, when twin stays were used, the rubber covering for the textile covering. If the patentee had been the first to use a rubber covering for steel stays, this might have involved invention. But he was not even the first to use it for twin stays, as appears by the English patent to Knight, of October 31, 1890. If he had been the first to discover that a rubber covering could be stitched to the garment without perforating it, that might have involved invention; but he was not. Without referring to other evidence, it is sufficient to cite the patent of Van Orden of October 30, 1887, covering a steel stay enveloped in any plastic compound, including celluloid or rubber, and sewed to the garment through the projecting edges of the covering. We are constrained to conclude that, although the patentee was entitled to the credit of making a more artistic article than those who had preceded him, he did nothing new in the patentable sense. The form of his stay was old, the materials were old, and in bringing them together in the particular manner described in the patent he did not develop in either any new characteristics or capacity. The claims of the patent are devoid of novelty, and the judgment of the circuit court is reversed, with costs, and with instructions to dismiss the bill.